IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **KWANE DOZIER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| VS. | : | NO. 5:23-CV-00418-MTT-CHW |
| | : | |
| **CENTRAL STATE PRISON,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Kwane Dozier has filed an Amended Complaint (ECF No. 19), a motion for leave to proceed *in forma pauperis* (ECF No. 20), and a response to the Court's December 12, 2023 Order (ECF No. 21). Plaintiff has also filed three additional documents in support of his motions to proceed *in forma pauperis* (ECF Nos. 25, 26, 27) and three letters regarding his treatment (ECF Nos. 22, 23, 24). For the following reasons, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**, but it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice.**

## MOTIONS TO PROCEED IN FORMA PAUPERIS

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Plaintiff's submissions demonstrate that he is presently unable to pay the cost of commencing this action. His applications to proceed *in forma pauperis* (ECF Nos. 2, 20) are therefore **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

### I. Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's

custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.      Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

# PRELIMINARY REVIEW OF PLAINTIFF'S RECAST COMPLAINT

## I.      Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. §

1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.

*Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.     Factual Allegations

Plaintiff's claims arise from his incarceration in the Central, Dooly, and Autry State Prisons. Recast Compl. 5, ECF No. 19. According to the Recast Complaint, which is the operative pleading in this action, Plaintiff was housed at Central State Prison from January 2023 until February 2023; Dooly State Prison from February 2023 to April 2023; and Baldwin State Prison from April 2023 to October 2023. *Id.*[1] Plaintiff alleges that Debra

---

[1] Plaintiff was previously warned that his Recast Complaint would supersede the original Complaint (ECF No. 1), Plaintiff's affidavits (ECF Nos. 4, 5, 6, 7, 8, 9, 11, 13, 14, 15), and any other documents that appear to contain factual allegations that may be relevant to this action. Plaintiff was also advised that he may include additional pages with the Court's standard form, but the recast complaint must be no longer than ten (10) pages in its entirety. In addition, Plaintiff was warned that the Court would not consider any allegations in any other document, or any allegations not contained within those ten pages, to determine whether Plaintiff has stated an actionable claim. Plaintiff's Recast Complaint totals sixteen pages, though the attachment to the Court's standard § 1983 form is only ten pages. The Court will therefore give Plaintiff the benefit of the doubt that he believed he was

Collins, the mother of the individual Plaintiff was convicted of murdering, "has financed crimes against [him], rape and physical assault, violating [his] constitutional rights" at each of these prisons. *Id.* As previously discussed, Plaintiff also alleges he suffers from a sleep disorder that makes him particularly vulnerable to being attacked by other inmates while he is sleeping. He contends he was attacked at each prison, and he also raises additional claims concerning his medical treatment and various conditions of his confinement at each prison. Plaintiff seeks compensatory and punitive damages as well as injunctive relief for Defendants' alleged violations of his constitutional rights. *Id* at 6.

### III. Plaintiff's Claims

#### A. Claims Occurring in Dooly and Baldwin State Prisons

Plaintiff again names more than two dozen individual Defendants in his Recast Complaint, and the events about which he complains took place in three different prisons. Recast Compl. 4-5, ECF No. 19. When faced with this type of multi-party, multi-claim lawsuit, the Court must question the propriety of joinder. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Federal Rules of Civil Procedure permit a plaintiff to join only related claims and defendants in a single complaint. To join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a

---

complying with the Court's order and will consider all the pages included in the Recast Complaint. The Court, however, will not consider any factual allegations contained in Plaintiff's letters (ECF Nos. 22, 23, 24) or other exhibits to determine whether Plaintiff has stated a claim upon which relief may be granted. If Plaintiff wishes to include any of those allegations in his Recast Complaint, he must move to amend or supplement his Complaint in accordance with Federal Rule of Civil Procedure 15.

right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and that "any question of law or fact common to all defendants will arise in the action."  Once a plaintiff has established that each defendant is properly joined, only then may he join as many claims as he has against each party per Federal Rule of Civil Procedure 18(a).  *See, e.g.,* 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1585 (3d Ed. Apr. 2018) ("Once parties are properly joined under [Rule 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a).").

The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes.  *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[2] "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant."  *Republic Health Corp.*, 755 F.2d at 1455 (internal quotation marks omitted).  In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements

---

[2] The standard for whether claims arise from the same transaction or occurrence for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13.  *See Smith*, 728 F. Supp. 2d at 1319.

of the Rule" and is "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009). The Court's discretion is also informed by the PLRA and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases. *See George*, 507 F.3d at 607.

In this case, Plaintiff states that the "fact common to all Defendants is Debra Collins." Recast Compl. 5, ECF No. 19. In other words, Plaintiff is claiming that joinder is appropriate because Defendant Collins orchestrated each of the attacks against him. *See id.* The "logical relationship" between claims necessary for proper joinder must be demonstrated by more than a general, conclusory assertion of an overarching conspiracy or retaliatory motive among defendants; the connection must be factually supported in the complaint. *See, e.g., Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (per curiam) (finding that district court properly exercised discretion to dismiss conspiracy claim prior to service where plaintiff made only a "naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts"); *see also Robinson v. Boyd*, No. 5:03CV25, 2005 WL 1278136, at *3 (N.D. Fla. May 26, 2005) (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998) (noting that "broad, conclusory allegations are insufficient to state a claim under section 1983," and retaliation claims require more than "general attacks" on a prison official's motivations)). At best, Plaintiff's claim that Defendant Collins conspired with or directed all the other Defendants to harm him is unsupported by specific facts. At worst, it is delusional. Either way, it is

8

insufficient to support joinder of Plaintiff's unrelated claims.

The fact that Plaintiff has alleged that various Defendants were deliberately indifferent to his sleep disorder also fails to establish that Plaintiff's claims are properly joined. The events about which Plaintiff complains occurred on different dates and at different prisons, and would require the Court to inquire as to each Defendant's subjective knowledge of the hazards posed by Plaintiff's sleep disorder. As such, Plaintiff's sleep disorder alone cannot serve as a basis for joining Plaintiff's claims against the various Defendants he has sued in this action. *See, e.g., Smith v. Owens*, 625 F. App'x 924, 928-29 (11th Cir. 2015) (per curiam) (affirming dismissal of claims under Rule 20(a) where "complaint alleged a variety of unrelated claims against different corrections officers, arising out of different events and occurring on different dates"); *Skillern v. Ga. Dep't of Corrs. Com'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (per curiam) (prisoner failed to show compliance with Rule 20 where he "claimed that many different transactions and occurrence were related because they showed the defendants' overall indifference to his medical conditions"); *Jones v. Wexford Health Sources, Inc.*, Case No. 19-cv-00386-NJR, 2019 WL 6080202, at *2 (S.D. Ill. Nov. 15, 2019) (finding that "discretionary actions taken by different officials at different prisons do not constitute the same series of transactions and occurrences with questions of fact common to each of the defendants" where defendants "made independent judgments about Plaintiff's condition, treatment, and grievances as it appeared to them at the time"). Plaintiff's claims concerning his most recent incarceration in the Dooly and Baldwin State Prisons should therefore be dismissed

9

without prejudice as improperly joined, and the Court will analyze Plaintiff's oldest claims—those arising from his incarceration in the Central State Prison—pursuant to 28 U.S.C. § 1915(e) and § 1915A.

B.  Central State Prison Claims

According to the Recast Complaint, Plaintiff was transferred to Central State Prison in October of 2022. Attach. 1 to Recast Compl. 8, ECF No. 19-1. Upon his arrival, he notified security, mental health, and medical that he had a sleep disorder. *Id.* At some time in November of 2022, he notified prison officials that "inmates were planning to attack [him] for Debra Collins," and he was placed in segregation. *Id.* Despite his assignment to segregation, "[i]nmates attempted to break through their cell wall in an attempt to carry out a hit for Debra Collins" in December of 2022. *Id.* Plaintiff also reported this incident, and the wall was repaired. *Id.*

In January of 2023, Plaintiff contends that Lieutenant Ryan placed another inmate—Timothy Fox—in Plaintiff's cell even after Plaintiff informed Defendant Ryan that he had a sleep disorder and should be housed alone. Attach. 1 to Recast Compl. 8, ECF No. 19-1. Plaintiff alleges that inmate Fox raped Plaintiff in his sleep and Plaintiff reported this incident to Officer Williams and Captain Banks. *Id.* Warden Sampson and CERT Officer Loud questioned Plaintiff about the incident, and Defendant Loud "confiscated 80% of [Plaintiff's] property" at that time. *Id.* Plaintiff states that he also met with PREA officers but never received medical treatment for any injuries suffered in the assault. *Id.* Plaintiff was transferred to Dooly State Prison approximately a week after the assault. *Id.*

### 1. Failure to Protect Claims

Plaintiff contends that "[p]rison officials failed to take necessary actions to protect [him]" after he "reported threats of safety, a hit out on [him], and attempts by inmates to harm [him]." Attach. 1 to Recast Compl. 9, ECF No. 19-1. Claims that prison officials were deliberately indifferent to an inmate's safety are generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting this type of Eighth Amendment claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk. *Id.* at 1332.

The subjective component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner. *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)). The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). The

objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted).

In this case, Plaintiff's claims are based on Defendants' alleged awareness of a specific threat to Plaintiff's safety. The Court must therefore examine what each Defendant knew prior to the assaults on Plaintiff. Plaintiff first states that he informed unidentified individuals that "inmates were planning to attack [him] for Debra Collins." Attach. 1 to Recast Compl. 8, ECF No. 19-1. But Plaintiff does not allege that he reported these threats to any of the named Defendants in this action; he also states that prison officials moved him to segregation when he reported these threats. *Id.* And when Plaintiff reported that inmates attempted to break into his cell to do him harm, prison officials repaired the wall. *Id.* Plaintiff has therefore failed to show that any named Defendant was deliberately indifferent to the threat that other inmates would attack him on Debra Collins' behalf, and these claims should be dismissed without prejudice.

Plaintiff also alleges that Defendant Ryan was responsible for assigning inmate Fox to Plaintiff's cell despite being informed that Plaintiff had a sleep disorder and should be bunked alone. Attach. 1 to Recast Compl. 8, ECF No. 19-1.[3] This conclusory allegation

---

[3] Plaintiff does not allege that he informed any of the remaining Central State Prison official Defendants—Sampson, Williams, Banks, Loud, "Medical Staff," and Surs—about the attack before it happened. He does state that "officials were made known of [his] sleeping disorder," but he does not specify which officials. Attach. 1 to Recast Compl. 8,

is not sufficient to state an actionable deliberate indifference claim against Defendant Ryan. The nature of Plaintiff's sleep disorder is not entirely clear from Plaintiff's allegations, nor is it clear exactly what Plaintiff told Defendant Ryan about his sleep disorder. Plaintiff has also failed to allege any facts suggesting that either he or Defendant Ryan knew that inmate Fox was dangerous. Without more specific allegations regarding how Plaintiff's sleep disorder might have made him particularly vulnerable to assault or why inmate Fox posed a particular threat to Plaintiff, Plaintiff has failed to state a claim upon which relief may be granted. *Cf. Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101 (11th Cir. 2014) (plaintiff pleaded facts sufficient to show he faced substantial risk of serious harm from cellmate where defendants knew cellmate "had a violent past, was very disruptive, and needed greater management," cellmate set fire to prisoner's belongings which suggested "it was possible that [the cellmate] was targeting [plaintiff] with his unsafe actions," and plaintiff told defendants he "feared for his life if he was returned to a cell with [cellmate]"). These claims should therefore be dismissed without prejudice.

### 2. Medical Treatment Claims

Plaintiff also contends that prison officials at Central State Prison failed to provide him with adequate medical care for his sleep disorder and for any injuries he suffered as

---

ECF No. 19-1. Plaintiff has therefore failed to allege facts sufficient to show that these individuals were subjectively aware of a significant threat to Plaintiff's safety prior to the attack. Plaintiff further states Defendants Sampson and Loud questioned Plaintiff about the incident and that he was transferred shortly after the attack, which indicates these Defendants were not deliberately indifferent to a continued threat to Plaintiff's safety. *Id.*

the result of being attacked in his sleep. Attach. 1 to Recast Compl. 9, ECF No. 19-1. These allegations give rise to claims that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

In this case, Plaintiff has failed to allege facts sufficient to show that he suffered from any serious medical needs. As noted above, Plaintiff does not describe the nature of his sleep disorder, nor does he describe the injuries he incurred when he was attacked by inmate Fox, identify his symptoms, or explain what medical treatment he required but did

not receive. Plaintiff has therefore failed to state a claim upon which relief may be granted, and his claims regarding his medical treatment should therefore be dismissed without prejudice.

### 3. *Property Claims*

Plaintiff next alleges that Defendant Loud "confiscated 80% of [his] property and never returned it." Attach. 1 to Recast Compl. 8, ECF No. 19-1. To the extent Plaintiff may be attempting to assert a due process claim based on the loss of his property, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "Georgia provides a civil cause of action for the wrongful conversion of personal property." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1). The Eleventh Circuit has "held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." *Id.* Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not available to him, and he has therefore failed to state a due process claim concerning the loss of his personal property.

### 4. *Retaliation Claims*

Plaintiff also alleges that Defendant Loud retaliated against him by confiscating Plaintiff's property "after [Plaintiff] reported incidents and met with prison staff." Attach. 1 to Compl. 9, ECF No. 19-1. To state a retaliation claim, an inmate generally needs to

show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Plaintiff has pleaded facts sufficient to show that he engaged in protected conduct and that the confiscation of his property may amount to an adverse action. *See, e.g., Williams v. Radford*, 64 F.4th 1185, 1192-93 (11th Cir. 2023) (noting that "the search of an inmate's cell and the destruction of his possessions and materials can support a First Amendment retaliation claim").

Plaintiff's retaliation claim fails, however, on the causal connection prong. Establishing a causal connection between a prisoner's complaint and the adverse action he suffered requires the prisoner to show that the prison official was subjectively motivated to take the adverse action because the prisoner complained about the conditions of his confinement. *Id.* at 1193. "This motive analysis is subject to a burden-shifting framework." *Id.* Under this framework, the prisoner must first "show that his constitutionally-protected speech was a 'motivating factor' in [the prison official's] decisions to carry out the adverse actions." *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If the prisoner satisfies this burden, the burden shifts to the prison official to show "that he would have implemented those adverse actions irrespective of [the prisoner's] complaints." *Id.*

In this case, Plaintiff has done nothing more than simply state his belief that Defendant Loud's actions were retaliatory. He has not alleged any facts to support his

16

assertion that Defendant Loud was subjectively motivated by Plaintiff's complaints to confiscate Plaintiff's property. Plaintiff has therefore failed to meet his burden of demonstrating a causal connection between Plaintiff's protected conduct and Defendant Loud's adverse action. *Iqbal*, 556 U.S. at 678; *see also Christmas v. Nabors*, 76 F.4th 1320, 1334 (11th Cir. 2023) (prisoner failed to state retaliation claim where prisoner failed to allege any facts to support "conclusory allegation" that prison official transferred prisoner in retaliation for complaints). Accordingly, these claims should also be dismissed without prejudice.

### 5. *Equal Protection Claims*

Finally, Plaintiff suggests that Defendants' failure "to take necessary actions to protect [him]" violated his equal protection rights. Attach. 1 to Recast Compl. 9, ECF No. 19-1. To the extent Plaintiff is attempting to assert a separate equal protection claim, he has failed to do so. The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To state an equal protection claim, a plaintiff must allege that similarly situated persons—or "comparators"—have been treated disparately through state action. *Williams v. Sec'y for Dep't of Corr.*, 131 F. App'x 682, 685-86 (11th Cir. 2005) (per curiam); *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). In this case, Plaintiff has not alleged that any similarly situated person was treated differently than he was, and he has therefore failed to state a claim upon which relief may be granted. *See, e.g., Williams*, 131 F. App'x at 687 (affirming dismissal of

17

equal protection claims where plaintiff "failed to allege facts showing that any other specific inmate" had been treated differently than plaintiff). Any equal protection claims Plaintiff seeks to raise in this action should therefore be dismissed without prejudice.

## IV. Conclusion

As discussed herein, Plaintiff's motions for leave to proceed *in forma pauperis* in this action (ECF Nos. 2, 20) are **GRANTED**, but it **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 22nd day of February, 2024.

                                             s/ Charles H. Weigle
                                             Charles H. Weigle
                                             United States Magistrate Judge